LEITCHFIELD MANUFACTURING COMPANY, Inc., Kane Manufacturing Company, Inc. and Horse Cave Manufacturing Company, Inc., Plaintiffs,

v.

UNITED STATES of America and Interstate Commerce Commission, Defendants.

Civ. A. No. 5901.

United States District Court,
W. D. Kentucky,
Louisville.

Jan. 16, 1970.

Judgment Vacated June 1, 1970.

See 90 S.Ct. 1729.

Carl L. Shipley, Washington, D. C., S. Russell Smith, Louisville, Ky., for plaintiffs.

Raymond M. Zimmet, Interstate Commerce Commission, John H. D. Wigger, Dept. of Justice, Washington, D. C., John L. Smith, U. S. Atty., Louisville, Ky., for defendants.

Before COMBS, Circuit Judge, and BROOKS and GORDON, District Judges.

MEMORANDUM

PER CURIAM.

This is an action brought under the provisions of Title 28 United States Code Sections 1336, 1398, 2284, 2321–2325, seeking to enjoin, annul and set aside an order of the Interstate Commerce Commission entered January 25, 1968, in Docket No. MC–C–5234, Leitchfield Manufacturing Company. In that proceeding the three plaintiffs were found to be operating as interstate motor carriers for compensation without requisite operating authority in violation of Sections 203(c) and 206(a) or 209(a) of the Act, Title 49 United States Code Sections 303(c), 306(a) and 309(a). They were ordered to cease and desist their unlawful operations.

The parties have stipulated that all facts necessary to a decision are contained in the administrative record of the Interstate Commerce Commission. The three plaintiffs involved in the condemned operations are separate corporations, Leitchfield Manufacturing Company, Inc., Kane Manufacturing Company, Inc. and Horse Cave Manufacturing Company, Inc., and are owned by the same family. Their general offices are maintained in Louisville, Kentucky, and a joint billing payroll and general administrative operating office for all three corporations is maintained at Leitchfield, Kentucky, and is under the common management and general superintending of a single manager. The corporations manufacture men's and boys' clothing in their plants located in central Kentucky. They obtain the cloth to manufacture the garments from New York firms and then return the finished garments to the same New York firms. Title to both the cloth and the finished garments remains in the New York firms with the corporations acting only as bailees of the goods.

About one-half of the time the New York firms select and designate regulated carriers to transport their goods between New York and Kentucky. However, when regulated carriers are not designated by the New York firms. Leitchfield, Kane and Horse Cave haul the goods in a tractor-trailer unit which they jointly lease. The name appearing on the unit is "Leitchfield", the driver is on Leitchfield records as an employee and the hauling operation is under the direct supervision of the joint manager of the three companies. Generally, the goods of all three companies are hauled at the same time and transportation costs are prorated on a cargo weight basis.

On these facts, it was decided by the hearing examiner that Leitchfield was operating as a contract carrier for and on behalf of Kane and Horse Cave without requisite authority, and that Kane and Horse Cave, to the extent they were beneficially affected by the operations, were participating in concert with Leitchfield in the violations. The three corporations contend that because of common ownership and the other circumstances surrounding their hauling enterprises, they are each engaged in the private carriage of goods for themselves and their customers, as bailees of their customers, in furtherance of their primary business enterprise and coming within the definition of "private carrier of property by motor vehicle" are, therefore, exempt from regulations by reason of Section 203(a) (17) [1] and (c) [2] of the Act, Title 49 United States Code Section 303(a) (17) and (c).

---

1. * * * any person not included in the terms "common carrier by motor vehicle" or "contract carrier by motor vehicle", who or which transports in interstate or foreign commerce by motor vehicle property of which such person is the owner, lessee, or bailee, when such transportation is for the purpose of sale, lease, rent, or bailment, or in furtherance of any commercial enterprise.

2. Except as provided in section 202(c), section 203(b), in the exception in section 203(a) (14) and in the second proviso in section 206(a) (1) [all of which are exemptions from the certification requirement inapplicable herein], no person shall engage in any for-hire transportation business by motor vehicle, in interstate or foreign commerce, or any public highway or within any reservation under the

**432**

■ The authorities fail to sustain the contentions of the plaintiffs. Generally, all motor carriers engaged in interstate commerce are subject to regulation under Section 202 of Part II, Chapter 8, of the Interstate Commerce Act, and under the Act a permit or certificate of public convenience and necessity is generally a prerequisite for the interstate operation of motor carriers. One of the exceptions to this general rule is that of a private carriage where a shipper furnishes its own motor transportation, 203(a) (17) and (c) of the Act. Because of the public interest, a primary objective of the scheme of economic regulation of motor carriers is to assure that shippers are provided a healthy system of motor carriage so they may get their goods to market. United States v. Drum, 368 U.S. 370, 82 S.Ct. 408, 7 L. Ed.2d 360 (1962). And as shown by Drum, while Congress recognizes a shipper's interest in furnishing his own transportation without compliance with for-hire licensing requirements, the Interstate Commerce Commission "has had to decide whether a particular arrangement gives rise to that 'for-hire' carriage which is subject to economic regulation in the public interest, or whether it is, in fact, private carriage as to which Congress determined that the shipper's interest in carrying his own goods should prevail". Since the Act is remedial and is to be liberally construed, it has been consistently held that the provisions of the Act defining exemptions are to be read in harmony with its purposes and held to extend only to the carriers plainly within its terms. Crescent Express Lines, Inc. v. United States, 320 U.S. 401, 64 S.Ct. 167, 88 L. Ed. 127 (1943); Gregg Cartage and Storage Co. v. United States, 316 U.S. 74, 62 S.Ct. 932, 86 L.Ed. 1283 (1942); McDonald v. Thompson, 305 U.S. 263, 59 S.Ct. 176, 83 L.Ed. 164 (1938). It has also been consistently held by the Commission that when individual shippers jointly arrange to utilize simultaneously motor vehicles which they either own or lease to transport their respective goods in mixed loads, they thereby provide "compensation" for each other within the meaning of the Act, by avoiding or reducing their transportation operating expenses so that they perform for-hire carriage rather than private carriage under the Act. See e. g., Shippers Cooperative, Inc. v. I. C. C., 308 F.2d 888 (9th Cir. 1962); Enterprise Trucking Corp., Contract Carrier Application, 27 M.C.C. 264 (1941); Southern Fruit Distributors, Inc., Contract Carrier Application, 31 M.C.C. 771 (1942); Equipment Rental, Inc.—Investigation of Operations, 71 M.C.C. 311 (1957). This is so even where the individual shippers, as corporate entities, are related through common ownership. See Schenley Distillers Corp. v. United States, 326 U.S. 432, 66 S.Ct. 247, 90 L.Ed. 181 (1946); Lukens Steel Co., Contract Carrier Application, 42 M.C.C. 672 (1943); Lee Wilson & Co., Contract Carrier Application, 29 M.C.C. 525 (1941).

■ Applying these principles of law to the recited facts of this case, which the record shows are supported by substantial evidence, it is concluded that the three plaintiffs, by jointly leasing motor vehicles for the transportation of their goods in mixed loads and prorating their expenses, provide "compensation" for each other by reducing their operating costs and, therefore, perform for-hire carriage rather than private carriage under the Act.

Since plaintiffs are operating as interstate motor carriers for compensation without requisite operating authority from the Interstate Commerce Commission, an appropriate order dismissing the complaint is this day entered.

exclusive jurisdiction of the United States, unless there is in force with respect to such person a certificate or permit issued by the Commission authorizing such transportation, nor shall any person engaged in any other business enterprise transport property by motor vehicle in interstate or foreign commerce for business purposes unless such transportation is within the scope, and in furtherance, or a primary business enterprise (other than transportation) of such person.